JOHN SLOOP, Respondent, v. FREDERICK A. DELANO, WILLIAM K. BIXBY and EDWARD B. PRYOR, as receivers of the WABASH RAILROAD COMPANY, Appellants.

Kansas City Court of Appeals, June 13, 1914.

1. DAMAGES: Railroads: Agents: Rates. The plaintiff inquired of the agent of the defendant as to the freight rate on timothy seed to Chicago and the agent informed him that the rate was 23 cents per hundred pounds. On this statement he bought the seed and shipped it, but had to pay 29 cents per hundred pounds, and he now sues to recover damages for the negligence of agent in so informing him. *Held*, that the negligence of an agent or clerk of a railroad company in giving false information relating to freight rates for interstate shipments will not afford a cause of action to the shipper for the recovery of ensuing damages.

2. ———: ———: ———: ———. The national legislation dealing with the subject of interstate shipments has displaced the laws, judicial policies and regulations of the various States and has prescribed instead a system designed and intended to be uniformly applied without reference to such superseded laws and policies.

3. ———: ———: ———. There is no difference between a negligent mistake in quoting freight rates and a negligent mistake in showing the shippers the wrong sheet. Each amounts to a negligent, as distinguished from a willful or fraudulent, misrepresentation for which an action would have inured to

the shipper under the common law of this State, but will not lie under the national laws as interpreted by the highest court in the nation.

Appeal from Schuyler Circuit Court.—*Hon. Nat M. Shelton,* Judge.

REVERSED.

*N. S. Brown* and *Higbee & Mills* for appellants.

It is averred in the petition that the correct freight rates between the points named as shown by the tariff and schedule on file in defendant's station was twenty-nine cents per hundred pounds. The petition wholly fails to state a cause of action. The plaintiff and the defendants were each bound by the schedule rates, this being an interstate shipment. The law charges the shipper with knowledge of the lawful rates whether the tariff schedules were posted or not. The petition does not allege a request to be shown the schedules. Railroad v. Elevator Co., 226 U. S. 441; 47 Law Ed. 290; Section 6 of Interstate Commerce Act, as amended June 18, 1910; Section 10 of same act as amended March 2, 1889, and June 18, 1910; Schenberger v. Railroad, 84 Kan. 79; 33 L. R. A. (N. S.) 391; Poor v. Railroad, 12 Inter. Com. 418; Railroad v. Mugg, 202 U. S. 242; 50 L. Ed. 1011, and other cases cited in note to Illinois Central v. Elevator Co., 226 U. S. 441; 47 Law Ed. 290.

*Fogle & Fogle* for respondent.

The common law giving damages for the breach of such duty does not embarrass, obstruct or impede the defendants in the full and fair performance of their duty as an interstate carrier and the application of the common law cannot be said to be an interference with interstate commerce nor does the imposition of common-law damages for such breach of duty come

within the interdiction of the Interstate Commerce Act. Hewitt v. Telegraph Co., 172 Mo. App. 272; Telegraph Co. v. James, 162 U. S. 650; Telegraph Co. v. Cross, 220 U. S. 364.

JOHNSON, J.—Plaintiff sued to recover damages caused by the negligence of defendant's agent at Queen City in giving an erroneous answer to plaintiff's request for information concerning a freight rate. The petition alleges that plaintiff, who intended to purchase timothy seed for shipment to Chicago, first went to the agent to ascertain the schedule rate on such shipments; that the agent consulted a tariff sheet on file in his office and "from that sheet and from the statement of the agent, plaintiff was informed that said freight rate was twenty-three cents per hundred pounds;" that the agent negligently selected and exhibited to plaintiff a sheet that did not apply to such shipments; that the proper rate was on file in the office and was twenty-nine cents per hundred pounds and that "the said agent so negligently and carelessly conducted himself in the premises that he failed to show plaintiff the correct sheet." Further it is alleged that relying upon the accuracy of the information thus imparted plaintiff purchased seven carloads of timothy seed and shipped them to Chicago and that he was compelled to pay for the transportation at the correct rate instead of paying at the represented rate. Defendant demurred to the petition on the ground that it fails to state a cause of action. The demurrer was overruled and defendants elected to stand on the demurrer and refused to plead further. Whereupon judgment was rendered for plaintiff and defendants appealed.

It is conceded, as it must be, that the alleged negligence related to an interstate shipment which would fall within the purview of the national laws relating to interstate commerce, but it is argued by counsel for

plaintiff that since the negligence occurred in this State an action would lie under the common law for the resultant damages.

Unquestionably such an action might be maintained if Congress had not enacted laws purporting to cover the whole field of interstate commerce. But the national legislation dealing with the subject is held by the Supreme Court of the United States to have displaced the laws and juridical policies and regulations of the various States and to have prescribed instead a system designed and intended to be uniformly applied without reference to such superseded laws and policies. [Adams Express Co. v. Croninger, 226 U. S. 491; Chicago, Burlington & Quincy Ry. Co. v. Miller, 226 U. S. 513; Chicago, etc. Ry. v. Latta, 226 U. S. 519.] As is said by NORTONI, J. in Manufacturing Company v. Railroad, 174 Mo. App. 192: "The Federal Statutes touching this matter and the decisions of the Supreme Court of the United States construing them afford an exclusive rule for the determination of controversies pertaining to the subject." [See also Sims v. Railway, 163 S. W. 275; 177 Mo. App. 18.]

The Supreme Court has held that negligence of an agent or clerk of a railroad company in giving false information relating to freight rates for interstate shipments will not afford a cause of action to the shipper for the recovery of his ensuing damages. [Henderson v. Railroad, 226 U. S. 441, and cases cited.] An interesting and instructive discussion of this rule is to be found in the decision of the Interstate Commerce Commission in Poor v. Railway, 12 Inter. Com. Rep. 418, where it is held that under the decisions of the Supreme Court of the United States in Railway v. Mugg, 202 U. S. 242 and Railway v. Hefley, 158 U. S. 98, "the question of the liability of carriers for the mistakes of their agents in quoting freight rates to shippers seems not to be open to further discussion."

There can be no difference in principle or consequence, as counsel for plaintiff argue, between a negligent mistake of the agent in quoting the rate and a negligent mistake in showing the shipper the wrong rate sheet. Each amounts to a negligent, as distinguished from a willful or fraudulent misrepresentation for which an action would have inured to the shipper under the common law of this State but will not lie under the national laws as interpreted by the highest court in the nation.

The reasons for this apparently harsh rule which in practical operation places the shipper at the mercy of careless agents and clerks is that "the law charges them (shippers) with knowledge of the lawful rates and they will not be heard . . . to claim the benefit of a lower than the lawful rate on the ground that some railroad clerk has made a mistake in quoting a lower rate for a particular shipment. To permit shippers to impute negligence to carriers in quoting rates and on that ground to enjoy the rate quoted instead of paying the lawfully published rate would open a broad and ample way for the payment of rebates and for other unlawful practices and might, in its practical results, work a repeal of the essential feature of this legislation." [Poor v. Railway, supra.] Whatever may be said of the soundness of this reasoning we are bound by the rule and must hold that the petition states no cause of action.

The judgment is reversed. All concur.