**SILENT SIOUX CORPORATION,**
Appellant,

v.

**CHICAGO AND NORTH WESTERN
RAILWAY COMPANY, Appellee.**

No. 16077.

United States Court of Appeals
Eighth Circuit.

Jan. 14, 1959.

P. L. Nymann, Sioux City, Iowa (Gene·
A. Probasco, Sioux City, Iowa, on the·
brief), for appellant.

Frank W. Davis, Des Moines, Iowa
(Ray H. Johnson, Jr., Des Moines, Iowa,.
on' the brief), for appellee.

Before JOHNSEN, VOGEL and.
MATTHES, Circuit Judges.

MATTHES, Circuit Judge.

The sole question for determination is.
whether appellee-defendant may be re-
quired to respond in damages to appel-
lant-plaintiff for the negligent act of de-
fendant's local agent at Orange City,
Iowa, in misquoting freight rates to·
plaintiff.

To plaintiff's complaint defendant in-
terposed a motion for judgment on the·
pleadings which was sustained and judg-
ment was rendered dismissing the com--
plaint. From this action, plaintiff has.
appealed. Looking to the averments in.
the complaint we find the case rests on
these facts: Following an invitation for·
bids on 800 units of oil fired space heat-
ers to be delivered to Camp Pendleton,.
California, plaintiff requested defend-
ant's local agent at Orange City, Iowa,.
to furnish the freight rate on the pro-
posed shipment. Defendant's agent
quoted the rate as being $5.29 per hun-
dred weight, and on the strength thereof
plaintiff submitted a per unit bid of
$57.74 delivered to Camp Pendleton, Cal-
ifornia. The correct and published
freight rate was $2.54 per hundred
weight. Plaintiff then alleges, that be-

cause of the erroneous rate as quoted by defendant's agent, upon which plaintiff relied in fixing its bid, it was not the low bidder and did not receive the business; that if the correct freight rate had been quoted, plaintiff's bid would have been lower than that of the successful bidder. Damages in the amount of $10,248 for lost profits were prayed.

The Interstate Commerce Act, 24 Stat. 380, as amended, 34 Stat. 586, 41 Stat. 483, Title 49 U.S.C.A. § 6(1) provides that every common carrier subject to the act shall file with the Interstate Commerce Commission and print, and keep open for public inspection, schedules showing all the rates, fares and charges for transportation between different points on its own route and between points on its own route and points on the route of any other carrier by railroad. Controlling the instant situation is paragraph 7 of the same section, which, after imposing the duty to file and publish rates as a prerequisite to engaging in the transportation of property, explicitly provides: "nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, * * * between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time."

Much litigation has been focused upon the Interstate Commerce Act, including the subject section. As a result, the principle is firmly established that the rate of the carrier as duly filed is the only lawful charge. Such is the holding in Texas & Pacific Railway Co. v. Mugg & Dryden, 202 U.S. 242, 26 S.Ct. 628, 50 L.Ed. 1011; Louisville & Nashville R. Co. v. Maxwell, 237 U.S. 94, 97, 35 S.Ct. 494, 59 L.Ed. 853; Kansas City Southern Ry. Co. v. Carl, 227 U.S. 639, 652–653, 33 S.Ct. 391, 57 L.Ed. 683; New York Central & Hudson River R. Co. v. United States (No. 2), 212 U.S. 500, 504, 29 S. Ct. 309, 53 L.Ed. 624; McFadden v. Alabama Great Southern R. Co., 3 Cir., 241 F. 562, 565; Lowden v. Simonds-

Shields-Lonsdale Grain Co., 306 U.S. 516, 520, 59 S.Ct. 612, 614, 83 L.Ed. 953, where the Court stated: "Until changed, tariffs bind both carriers and shippers with the force of law." Since rates must be filed and published, and have the force of law, it is not difficult to understand why the courts have consistently held that shippers are charged with notice thereof.

Mr. Justice Hughes, in Louisville & Nashville R. Co. v. Maxwell, supra, gave clear expression to the principle in this language, 237 U.S. at page 97, 35 S.Ct. at page 495: "Deviation from it (filed rate) is not permitted upon any pretext. *Shippers and travelers are charged with notice of it,* and they as well as the carrier must abide by it, unless it is found by the Commission to be unreasonable. Ignorance or *misquotation* of rates is not an excuse for paying or charging *either less or more* than the rate filed. This rule is undeniably strict, and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to *prevent unjust discrimination.*" (Emphasis supplied.) In the earlier case of Kansas City Southern Ry. Co. v. Carl, supra, the Supreme Court states at page 653 of 227 U.S., at page 395 of 33 S.Ct.: "(t)he shipper's knowledge of the lawful rate is *conclusively* presumed, * * *." (Emphasis supplied.) See also McFadden v. Alabama Great Southern R. Co., supra; Pettibone v. Richardson, 7 Cir., 126 F.2d 969, 970; J. H. Hamlen & Sons Co. v. Illinois Cent. R. Co., D.C.E.D.Ark.W.D., 212 F. 324, 328.

The precise question before us, viz.: May an interstate carrier be required to respond in damages because of a misquotation of rates, has also been considered and answered in the negative. In the early case of Texas & Pacific Railway Co. v. Mugg & Dryden, 202 U.S. 242, 26 S.Ct. 628, 50 L.Ed. 1011, the Court was concerned with an action for damages, occasioned by defendant's negligence in misquoting a freight rate on coal shipments on which the shipper had

relied in setting his sales price. The claim was disallowed on the authority of Gulf, Colorado & S. F. Railway Co. v. Hefley, 158 U.S. 98, 15 S.Ct. 802, 39 L. Ed. 910. The holding in Texas & Pacific Railway was followed in Illinois Cent. R. Co. v. Henderson Elevator Co., 226 U.S. 441, 446–447, 33 S.Ct. 176, 57 L.Ed. 290 and in Pettibone v. Richardson, supra, both being actions for damages resulting from misquotation of rates.

■ Plaintiff recognizes the foregoing law, but attempts to escape the force thereof by advancing the argument that the cases from which the principles emerged are distinguishable on the facts. More precisely it is said that the courts were dealing with situations where the carrier had quoted a rate *lower* than that fixed by the filed and published tariff, whereas here the rate quoted was *higher*. From this premise plaintiff goes forward and says that when the carrier through mistake or otherwise quotes a rate lower than that legally established, the shipper is charged with knowledge of the correct rate, but that when the rate quoted is higher, then only the carrier, and not the shipper is conclusively presumed to know the rate it is legally entitled to charge. This reasoning cannot be reconciled with the pronouncements of the Supreme Court in Louisville & Nashville R. Co. v. Maxwell and Kansas City Southern Ry. Co. v. Carl, supra. It is clear from what has been written on the subject that one of the prime reasons for the enactment under consideration is to prevent discrimination, which in our view, would result from either a higher or lower misquotation of the lawful rate.

■ We have given consideration to the case of St. Louis S. W. Ry. Co. of Texas v. Lewellen Bros., 5 Cir., 192 F. 540, certiorari denied 225 U.S. 701, 32 S.Ct. 835, 56 L.Ed. 1264, relied on by plaintiff, in which recovery was permitted on the theory that defendant carrier had failed to file and post an established rate in one of its local offices. From cases subsequently decided the principle is now clear and well settled that posting of the rates in the carrier's local office is not essential to make the rates legally operative. Kansas City Southern Ry. Co. v. C. H. Albers Comm. Co., 223 U.S. 573, 594, 32 S.Ct. 316, 56 L.Ed. 556; Illinois Cent. R. Co. v. Henderson Elevator Co., 226 U.S. 441, 447, 33 S.Ct. 176, 57 L.Ed. 290; Pettibone v. Richardson, 7 Cir., 126 F.2d 969, 970.

■ To hold that a carrier may be required to respond in damages on the facts before us, could have the effect conceivably of opening the door to the evils which the applicable legislation is designed to prevent.

Affirmed.